UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-11-FDW

| WILLIE T. BOBBITT, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| KEITH WHITENER, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on an initial review of Plaintiff's pro se complaint that was filed pursuant to 42 U.S.C. § 1983. (Doc. No. 1).

## I. BACKGROUND

Plaintiff is a prisoner of the State of North Carolina following his conviction for being a habitual felon (principal), among other convictions, and his projected release date is September 15, 2017.[1] In his pro se complaint, Plaintiff alleges that on September 11, 2013, Officers Link and Beard entered his cell and conducted a search for "provocative writings." Officer Link seized materials which Plaintiff identified as religious materials and Plaintiff explained that they were in no way provocative. Sergeant Cockerham arrived and ordered Officer Link to prepare a DC-160 form[2] to document the confiscated materials which were going to be reviewed as part of a safety inspection based on an apparent concern that the materials may be gang related. Plaintiff refused to sign the form because he was upset that his religious materials were being removed from his cell.

At some point between the date of confiscation and September 24, 2013, the seized

---

[1] This information was accessed from the website of the North Carolina Department of Public Safety.
[2] A DC-160 form is a Personal Property Inventory form that includes information regarding the property at issue, the date and time of confiscation and policy states that the inmate and two staff members must sign the form. See http://www.doc.state.nc.us/dop/policy_procedure_manual/index.htm (Prisons: Policy & Procedure Manual, Chapter B § .0700).

1

materials were determined not to be gang related. Plaintiff was informed of this by letter and he was notified that because he refused to sign the DC-160 form, his materials would be maintained by staff. Plaintiff was also informed in this letter that he was being placed on an "Associate List for a Gang."

Plaintiff contends that maintaining his religious materials violates his right to the free exercise of religion which he identifies as Moorish Science Temple of America. Plaintiff also offers a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C § 2000cc-1 et seq. In his claim for relief, Plaintiff seeks the return of the seized materials and the removal of his name from the "Associate List," and among other claims, an award of compensatory damages in the amount of $50,000 against each defendant along with punitive damages.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(A)(a), "The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Following this initial review the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). In conducting this review, the Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under Federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979) (internal citations omitted). As is pertinent here, prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1979) (per curiam). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948). A prison regulation that impinges on constitutional rights is valid so long as it is reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). Importantly, it is not the role of the federal judiciary to micro-manage state prisons or to determine how a particular prison might better function; the expertise of the prison officials should be afforded due deference. See Sandlin v. Conner, 515 U.S. 472, 482 (1995).

Plaintiff no doubt has a protected right to the free exercise of religion. However in the present case, the Court finds that Plaintiff has failed to demonstrate that any of the defendants have placed a substantial burden on his right to the free exercise of religion because the record in this matter demonstrates that it is Plaintiff that stands in the way of the return of his religious materials. Put another way, signing a form to acknowledge property does not present a substantial burden on the facts as presented in this record.

Plaintiff plainly admits that he refused to sign the DC-160 form and he acknowledges that the reason the seized materials were not returned to him was precisely because he would not sign the form. (5:14-cv-11, Doc. No. 1: Complaint at 4). In addition, Plaintiff attaches copies of his

3

written grievances and the responses thereto.³ The grievances support Plaintiff's assertion that he refused to sign the form and as a consequence, his materials were detained.⁴ See, e.g., (Doc. No. 9-1 at 2: Step One – Unit Response: "Items were taken during a search of your cell. These items were sent to the Facility Intelligence Officer for evaluation for STG material. You were given the opportunity to sign a dc-160 for this property and you refused. Due to the fact that you refused to sign the form the papers were placed in a file in the FIO's office."); (Step Two – Area/Complex/Institution Response: "In addition to the response addressed in [Step One], due to your refusal to sign the DC-160, the papers in question became contraband and will remain with the Facility Intelligence Officer. No further action is necessary."). Id. Plaintiff's grievance was ultimately dismissed following the Step Three review. Based on the foregoing the Court finds that Plaintiff has failed to state a claim upon which relief may be granted and his claim for denial of the free exercise of religion will be denied.

Finally, Plaintiff has also presented a claim that his classification on the "Associate List" is actionable in this § 1983 proceeding. Plaintiff presented a written grievance regarding this classification and it was explained that he would "remain on the associate's list for 5%er for further monitoring." (Id. at 9-1 at 5). Plaintiff does not allege what adverse consequences he has experienced as a result of this classification other than to claim that "[b]y putting me on this Associated List makes officers and other staff look at me differently and upon being released from prison will cause my probation officer" to treat him as though he were a gang member. (Id., Doc. No. 1 at 4).

As to the first concern, his contention that prison employees may look at him differently is

---

³ In North Carolina, State prisoners must complete a three-step administrative remedy procedure in order to exhaust their administrative remedies. See N.C. Gen. Stat. §§ 148-118.1 to 148-118.9 (Article 11A: Corrections Administrative Remedy Procedure); Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008).

⁴ Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

insufficient to state a § 1983 claim because it fails to demonstrate any violation of a constitutional right. In other words, in order to state a claim for relief, a plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As to the latter complaint about his future probation, the Court finds that this prospective concern fails to state a claim as Plaintiff is not scheduled for release until September 17, 2017, and the record makes clear that prison officials would continue to monitor his classification. For the reasons stated herein, the Court finds that Plaintiff has failed to state a claim for relief and this complaint will be dismissed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice. (Doc. No. 1).

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel is **DENIED**. (Doc. No. 4).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: July 28, 2014

Frank D. Whitney
Chief United States District Judge